788 P.2d 1327

**STATE of Idaho, Plaintiff-respondent,**

v.

**Larry Gene RYAN, Defendant-appellant.**

**No. 17480.**

Supreme Court of Idaho.

March 22, 1990.

Alan E. Trimming, Ada County Public Defender, Boise, for appellant. John J. Hansen, Deputy Public Defender, argued.

Hon. Jim Jones, Atty. Gen., Boise, for respondent. Michael A. Henderson, Deputy Atty. Gen., argued.

BAKES, Chief Justice.

Larry Gene Ryan was charged with possession of cocaine with intent to deliver. Ryan entered a conditional plea of guilty and now appeals the district court's ruling denying his motion to suppress on the grounds that Ryan lacked standing to challenge the legality of the search.

On January 20, 1988, at about 9:30 p.m., Officer Craig Boll of the Idaho State Police stopped a car for speeding on the Interstate a few miles east of Boise. The appellant, Larry Gene Ryan (Ryan), was a passenger riding in the back seat of a car driven by Ramon Birrueta (driver). Ramon's wife, Rhonda Lee, sat next to him in the front seat.

Officer Boll asked the driver for his driver's license, registration and proof of insurance. The driver had a Washington state driver's license. The car was registered in Washington, but to a different person. There was no insurance. The driver admitted to the officer the car was not his. The officer told the driver to step out of the car, and the driver complied. The officer asked the driver who owned the car and the driver responded with a name that did not match the one on the registration. The officer asked the driver if he could look in the car and the driver said "no."

The officer and the driver went to the officer's car where the driver then signed a permission to search form. (This consent was later held by the district court to be invalid because the driver did not understand the nature of his rights.)

Another officer, Robert Storm, arrived to assist Officer Boll. Officer Boll asked Ryan and the driver's wife to step out of the car. It was a cold January night, and the officer asked them to sit in the police car. The officers then searched the car. In the back seat they found a back pack which contained "bindles" of small paper containers, a set of scales and a scoop with a white powdery substance. Under the front seat they found a plastic bag containing a spoon and a hypodermic needle. In a purse they found six baggies containing a white powdery substance and a pistol. Field tests were subsequently performed on the powdery substances and it was confirmed later that this substance was cocaine. Ryan, the driver and the other passenger were subsequently arrested and taken to jail.

After a preliminary hearing Ryan was charged with possession of cocaine with intent to deliver. Ryan filed a motion seeking suppression of the items found in the car. A hearing on the suppression motion was held on May 14, 1988. District Court Judge Gerald F. Schroeder suppressed the evidence as to the driver, ruling that the driver had not given knowing consent to search the car. However, he also ruled that the passenger Ryan did not have standing to challenge the search of the car or the purse, although he did have standing to challenge the search of his back pack. Following the ruling on the suppression motion Ryan entered, and the trial court accepted, his conditional plea of guilty, reserving the suppression issue for appeal. I.C.R. 11(a)(2).

The foregoing facts present us with the following limited issue: did the district court err in holding that Ryan did not have

standing to challenge the search of the vehicle in which he was riding?

On appeal, Ryan argues first that, as a passenger in a vehicle which is subject to an allegedly illegal search, he has standing to challenge the validity of that search. Ryan further contends on appeal that he was the victim of a constitutionally impermissible investigatory stop. Ryan does not question the validity of the initial stop, which was obviously valid by virtue of the fact that the car in which Ryan was a passenger was traveling in excess of the speed limit; rather, Ryan contends that by being asked to step out of the car and wait in the police officer's car while they conducted the search, he was impermissibly detained and therefore the victim of an unreasonable seizure. Ryan concludes that all items discovered as a result of the search must be suppressed as fruits of the poisonous tree. The district court rejected Ryan's claim. We affirm.

We first note the distinction between standing to challenge an allegedly unreasonable stop and standing to challenge an allegedly unreasonable search. In *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984), we stated that it was necessary to "[d]istinguish standing to contest a stop of a vehicle from the standing required to contest a *search* of a vehicle. The latter requires that the defendant 'must demonstrate some proprietary interest in the premises searched or some other interest giving [the defendant] a reasonable expectation of privacy.'" 106 Idaho at 407, n. 2, 679 P.2d at 1125, n. 2. In *Haworth*, a police officer observed an automobile traveling slowly at approximately 10:00 p.m. with the trunk lid up displaying a large object inside. The threshold issue in that case was whether defendants had standing to challenge the *investigatory stop* of the vehicle. Citing *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), we explained that "[s]topping an automobile and detaining its *occupants* constitute a 'seizure' within the meaning of [the fourth amendment], even though the purpose of the stop is limited and the resulting detention is quite brief." 106 Idaho at 406, 679 P.2d at 1124. In

*Haworth* there was no basis for the officer's investigatory stop.

We need not address the issue of whether Ryan would have had standing to challenge the stop in this case because no such argument was made at the district court level, no doubt because officer Boll clearly had probable cause to stop the car in which Ryan was riding because the driver was speeding. Not having raised that issue below, it cannot be raised now for the first time on appeal. *State v. Hesse*, 110 Idaho 949, 719 P.2d 1209 (1986); *Lockard v. State*, 92 Idaho 813, 451 P.2d 1014 (1969); *State v. Gish*, 89 Idaho 334, 404 P.2d 595 (1965).

We next consider the only issue properly before us on appeal: whether Ryan had standing to challenge the search.

This Court has previously addressed this issue on several different occasions. In *State v. Cowen*, 104 Idaho 649, 662 P.2d 230 (1983), we upheld a trial court's decision to refuse to suppress evidence taken from the car in which the defendant was a passenger on the grounds that the defendant lacked standing to object to the search of the car. In *Cowen*, as in the present case, the defendant was a passenger in a vehicle subject to an allegedly illegal search. The defendant in *Cowen*, like Ryan, did not claim ownership of the vehicle in which he was riding. We stated in *Cowen* that:

> The rule is well established that suppression may be obtained only by those whose rights are infringed, [citations omitted], and that a person asserting standing to suppress must demonstrate some proprietary interest in the premises searched or some other interest giving a reasonable expectation of privacy, [citations omitted]. No such interest has been shown by Cowen. A suppression motion must be predicated on a defendant's personal legitimate fourth amendment interest and cannot merely be a vicarious claim that the government has invaded some other third person's privacy rights.

104 Idaho at 651, 662 P.2d at 232. In *State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981), the defendant sought to suppress evidence obtained in a warrantless car search. In *Bottelson*, as in the present case, the defendant did not show that he actually owned the automobile in question; however, he did demonstrate that he was personally in possession of the car at the time he was searched. We there stated: "On the present record the defendant has not shown that he had a legitimate expectation of privacy in the Pontiac." 102 Idaho at 92, 625 P.2d at 1095. We went on to conclude that "[a] court may not exclude evidence under the fourth amendment unless it finds that an unlawful search or seizure violated the defendant's legitimate expectation of privacy." 102 Idaho at 92, 625 P.2d at 1095. Our holdings in *Cowen* and *Bottelson* are in turn based on the United States Supreme Court's holding in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas*, the Court held that mere occupants of an automobile had no standing to suppress evidence obtained during a warrantless search of the interior of the car. The court in *Rakas* explained that, in a situation where there are passengers in an automobile, the fact of being "legitimately on the premises" was not determinative of a legitimate expectation of privacy in the areas of the automobile search, such as would entitle them to standing. The Court stated:

> [H]ere petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the ... area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger ... simply would not normally have a legitimate expectation of privacy.

439 U.S. at 148–149, 99 S.Ct. at 433.

Ryan argues that the holding in *Rakas* is distinguishable from the present case in that the defendants in *Rakas* did not challenge the stop of their car or their removal by the police as did Ryan. However, as we previously indicated, Ryan failed to challenge the legality of the stop at the district court level and cannot raise this issue for the first time on appeal. To that extent, *Rakas* is indistinguishable from the present case and therefore properly dictates the holding we reach today.

The decision of the district court is therefore affirmed.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

Having concurred in Chief Justice Bakes' opinion, time is taken for the sole purpose of expressing my understanding of why the appeal was taken. At first blush when we read the briefs and heard oral argument, seemingly there was merit in Ryan's appeal. Ryan just happened to be a passenger in the car. Unfortunately for Ryan the driver of the car was speeding, and an officer pulled the car over for that offense. Unfortunately for Ryan the car was registered to a person other than the driver, and when the officer asked who owned the car, the driver gave a name which did not match with the owner's name on the registration. Unfortunately for Ryan it was a cold night and the officers allowed the inhabitants of the suspect car to sit in the warm patrol car while the suspect vehicle was searched. Powdery substances and drug paraphernalia were found in the car, and unfortunately the substances turned out to be the cocaine which the officers suspected to be the case. Unfortunately for Ryan the purse of the female passenger did contain six baggies containing the white powdery substance, and, to Ryan's extreme misfortune, the female passenger declared the baggies were not hers, but were Ryan's, and that he had asked her to put them in her purse while they were in the process of being pulled over. Unfortunately, being a gentleman of honor, Ryan confirmed what the lady said.

The law being as it is, and being well-established as pointed out by Chief Justice Bakes, it is pure and simple a case of Ryan being in the wrong place with the wrong medication at the wrong time—a victim of

circumstances which would have been of no consequence had he not possessed illegal drugs.

JOHNSON, Justice, specially concurring.

Because of the holding in *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983), I reluctantly concur in the Court's opinion. I write only to point out that as to the construction of article 1, section 17 of our state constitution consistently with the construction of the fourth amendment by the United States Supreme Court, *Cowen* is limited to the question of standing. In *State v. Thompson,* 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988) we said:

This Court has previously noted that art. 1, § 17 of our constitution "is to be construed consistently with the fourth amendment to the United States Constitution." *State v. Cowen,* 104 Idaho 649, 650, 662 P.2d 230, 231 (1983). *See also, State v. Rice,* 109 Idaho 985, 989, 712 P.2d 686, 690 (App.1985), *rev. den.* (1986). However, this statement does not bear on our decision in this case, since the portion of the decision in *Cowen* where it appears concerned the standing of a person to raise the question of unreasonable search and seizure, and not the substance of the rights protected under art. 1, § 17. Seven months after *Cowen,* we voiced our willingness to consider whether the scope of art. 1, § 17 is different than that of the fourth amendment, as interpreted by the United States Supreme Court:

[T]he guarantee against unreasonable search and seizure in article I, § 17 of the Idaho Constitution is substantially the same as the parallel provisions of the Fourth Amendment to the United States Constitution; nevertheless, it is for this Court to decide whether to relax the standard for the demonstration of probable cause in accord with [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ], or whether to retain the more protective criteria of *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ] and *Spinelli* [*v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d

637 (1969) ] and their progeny as our test.

*State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983).

Twice more since *Cowen* this Court has pointed out that in interpreting article 1, § 17 we are not bound by the interpretations of the fourth amendment by the United States Supreme Court. *State v. Newman,* 108 Idaho 5, 10 n. 6, 696 P.2d 856, 861 n. 6 (1985); and *State v. Johnson,* 110 Idaho 516, 520 n. 1, 716 P.2d 1288, 1292 n. 1 (1986). As we said in *Newman:*

[F]ederal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. *See Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975). This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.

108 Idaho at 10 n. 6, 696 P.2d at 861 n. 6.

Today we reaffirm that in interpreting provisions of our constitution that are similar to those of the federal constitution we are free to extend protections under our constitution beyond those granted by the United States Supreme Court under the federal constitution.

Since we have spoken on the question of standing in *Cowen,* I am prepared to be bound by that precedent here. I am not prepared to forego the construction of article 1, section 17 to limit the other protections afforded under our constitution to those provided by the United States Supreme Court under the fourth amendment.