IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 38855/38867/38868

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 328 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 14, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SANDEE DENISE CARGILE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson; Hon. Timothy S. Hansen, District Judges.

Orders denying suppression motion and revoking probation, <u>affirmed</u>. Judgment of conviction and sentence for escape, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

This is a consolidated appeal. In Docket No. 38855, Sandee Denise Cargile entered a conditional guilty plea to possession of methamphetamine with intent to deliver, reserving the right to appeal the denial of her motion to suppress evidence. In Docket No. 38867, Cargile appeals from the district court's order revoking probation and executing the sentence on a previous conviction for possession of methamphetamine, contending that the court should have sua sponte reduced her sentence on revocation. In Docket No. 38868, Cargile pleaded guilty to escape, and she asserts that the court imposed an excessive sentence. We affirm.

## I.

## BACKGROUND

In Docket No. 38855, Cargile challenges the denial of her motion to suppress drug evidence found in her vehicle during a traffic stop. At the suppression hearing, the sole witness

1

was Ada County Sheriff Deputy Vogt. In its written order denying the motion, the district court made the following findings. Around 7:30 p.m. on June 23, 2011, Vogt, an experienced narcotics detective, was patrolling the area of Five Mile and Overland in Boise, Idaho when he observed defendant Sandee Cargile fail to use her turn signal. Vogt then followed her for about two miles, during which he contacted Deputy Piccola, a canine handler who is part of his "Action team," for assistance, as a matter of routine and also because he was becoming suspicious of Cargile's behavior, primarily because of the way she looked at him and the way she did not look at him. After about two miles and positioned directly behind Cargile, Vogt activated his red and blue emergency lights. He noticed that Cargile looked out of the corner of her eye in the driver's side mirror at him. Cargile did not immediately pull over but continued to drive for about a quarter of a mile, and it appeared to Vogt that Cargile was acting as though she did not see him. He saw a little head movement, but not a full look into the mirror. It looked like Cargile was looking out of the corner of her eye and not yielding. After a quarter of a mile, Vogt activated his siren a couple of times to get Cargile's attention. She then looked directly into the rearview mirror at the officer. Instead of pulling over to the right-hand side of the road, she drove into the center turn lane. Vogt thought that was odd because, in his numerous traffic stops, a person will pull over to the far right-hand lane. She then turned left across traffic and pulled into a large parking lot of a business. Instead of stopping, she continued to drive very slowly to the rear of the parking lot behind some buildings. Vogt found all this driving and parking pattern to be unusual. Additionally he was becoming concerned about his safety because of the stop behind buildings and out of public view.

After Cargile stopped, Vogt approached her truck, spoke to her and obtained her driver's license and information. He returned to his vehicle to run checks and found that Cargile had some past convictions for drug offenses. Within about five minutes of the initial stop of Cargile's vehicle, Deputy Piccola arrived with the canine. Vogt brought Piccola up to speed. The intent was that while Piccola ran the canine around the truck, Vogt would finish dealing with the traffic violation. Within eight minutes of the stop, Vogt returned to Cargile to tell her about her turn signal and the reason for the stop. He asked her to step out of the truck. She refused, saying it was her right to stay in the vehicle. He asked several times and she said "no." He then told her he had a drug dog present, that she needed to step out of the truck so he could safely run the dog, and that if she refused she would be arrested for obstructing. She again said "no." After several

2

refusals by Cargile of Vogt's directive to exit the vehicle, Vogt told Cargile she was under arrest. She then quickly leaned over and locked the driver's door. The window was still open so Vogt reached through the open window and controlled Cargile's arms behind her back while Piccola unlocked the passenger door and reached for Cargile, moving her personal items out of the way and putting some on the ground in the process. After Cargile was removed and arrested, the canine alerted to items on the ground and in the vehicle.

A subsequent search of Cargile's belongings and truck resulted in the discovery of, among other things, 20.3 grams of methamphetamine, a digital scale, clear plastic baggies, a "pay/owe" ledger sheet, used syringes, a glass methamphetamine pipe with burnt residue and $2,030 in cash. Cargile was charged with possession of methamphetamine with intent to deliver, I.C. § 37-2732(a)(1)(A); possession of drug paraphernalia, I.C. § 37-2734A(1); and resisting and obstructing an officer, I.C. § 18-705.

Cargile filed a motion asserting that the evidence found in her vehicle and belongings must be suppressed because Deputy Vogt unlawfully extended the duration of her detention on the traffic violation to allow time for Deputy Piccola and his drug detection dog to arrive. After the district court denied the suppression motion, Cargile entered a conditional guilty plea to possession of methamphetamine with intent to deliver, reserving the right to appeal the denial of the motion, and the State dismissed the remaining charges. The district court imposed a unified sentence of thirteen years' imprisonment with four years determinate. Cargile appeals from the judgment of conviction.

Before Cargile was arrested and charged in Docket No. 38855, she was on probation in Docket No. 38867 for a previous conviction for possession of methamphetamine. Based upon the offenses charged in Docket No. 38855, along with other violations, the State moved for revocation of Cargile's probation and execution of the underlying sentence. Cargile admitted the violations. The district court revoked probation and executed the underlying sentence of five years, with one year fixed. On appeal, Cargile contends that the district court should have sua sponte reduced her sentence on revocation of probation.

After Cargile pleaded guilty to the possession with intent to deliver charge and admitted the probation violations in the above cases, but before the respective sentencing and probation disposition hearings, Cargile filed motions in both cases requesting an eight-hour furlough from jail to attend to personal matters in Ada County. The district courts granted the motions. Cargile

3

did not return to the jail as scheduled but instead fled. Both courts issued arrest warrants, and Cargile was apprehended five months later in Kootenai County and brought back to Ada County. For her actions, she was charged in Docket No. 38868 with escape, I.C. § 18-2505. She pleaded guilty, and the district court imposed a unified sentence of four years, with one year fixed, to be served consecutive to the sentence in Docket No. 38855. On appeal, Cargile argues that the court imposed an excessive sentence.

## II.

## ANALYSIS

### A.     Suppression Motion in Docket No. 38855

In Docket No. 38855, Cargile argues that Vogt stalled his investigation of the traffic offense in order to allow time for the drug dog to arrive and, therefore, illegally extended the traffic stop. She also appears to assert that before he approached the vehicle a second time, Vogt had abandoned his investigation of the traffic offense and had begun to focus exclusively on investigating a potential drug offense. Cargile maintains that because the facts known to Vogt did not amount to reasonable suspicion of a drug offense, her detention became unlawful. Consequently, she asserts, the evidence discovered as a result of the unlawful detention must be suppressed.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. An investigative detention is a seizure of limited duration to investigate suspected criminal activity and does not offend the Fourth Amendment if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008); *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct. App. 1991). In determining whether a detention that was initially justified later became unreasonable, the court is to consider the duration of the detention and the law enforcement purposes served. *United States v. Sokolow*, 490 U.S. 1, 10-11 (1989); *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998); *Stewart*, 145 Idaho at 646-47, 181 P.3d at 1254-55. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Royer*, 460 U.S. at 500. Any evidence seized as a result of an unlawful stop or an unreasonable

4

detention is "fruit of the poisonous tree" and is, therefore, inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *State v. Bordeaux*, 148 Idaho 1, 6, 217 P.3d 1, 6 (Ct. App. 2009).

When a decision on a suppression motion is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). However, the reasonableness of a given search or seizure based on those facts is a question of law over which we exercise independent review. *State v. Linenberger*, 151 Idaho 680, 683, 263 P.3d 145, 148 (Ct. App. 2011); *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998).

Cargile first asserts that Vogt stalled his investigation of the traffic offense beyond the time needed to investigate that offense in order to allow time for the drug dog to arrive. Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Royer*, 460 U.S. at 500; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). The United States Supreme Court has stated that an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500. *See also State v. Godwin*, 121 Idaho 491, 501, 826 P.2d 452, 462 (1992); *State v. Martinez*, 136 Idaho 436, 440-41, 34 P.3d 1119, 1123-24 (Ct. App. 2001). A drug dog sniff does not constitute a search and may be conducted during a traffic stop without reasonable suspicion of drug activity. *Illinois v. Caballes*, 543 U.S. 405, 408-10 (2005). It is therefore not necessarily a Fourth Amendment violation for an officer who has stopped someone for a traffic violation to ask unrelated questions about drugs, or to run a drug dog around the perimeter of the vehicle. *See, e.g.*, *Parkinson*, 135 Idaho at 362-63, 17 P.3d at 306-07. However, the *Caballes* Court was careful to note that the duration of the stop there at issue was not unlawfully lengthened by the use of the drug dog. *Caballes*, 543 U.S. at 408.

In support of her position that the traffic violation investigation was unreasonably prolonged, Cargile points to Vogt's testimony about his usual practice when he calls for a backup officer. He testified that when he calls for a backup officer, he usually waits for the officer to

arrive before he approaches the stopped vehicle, and that he usually calls for Deputy Piccola because he has a drug dog. From this, Cargile concludes that Vogt "consistently and routinely delays a standard traffic stop in order for the drug dog to arrive on the scene." The testimony that Cargile relies on is irrelevant in this case, however, because it is uncontroverted that Vogt *did not* wait for the backup officer to arrive before he approached Cargile's vehicle and began addressing the traffic offense. What Vogt may or may not have done in other cases is not pertinent to the undisputed facts in this case.

Cargile's other argument suffers from similar flaws. Vogt testified that he normally writes a citation, approaches the driver, and asks the driver to exit the vehicle to explain the citation, and in the meantime, the drug dog is employed around the vehicle. Cargile asserts that such a procedure would be lawful, but reasons that because Vogt in this case had not "even begun to write a ticket," the detention was necessarily unlawful. Cargile does not explain why, in her view, this fact conclusively establishes that the stop was unlawfully extended.

Cargile's arguments are off point. The appropriate inquiry is whether the facts establish that the traffic infraction investigation became unlawful because it was "prolonged beyond the time reasonably required to complete that mission." *Id.* at 407. The district court made a number of factual findings relevant to this inquiry, findings that Cargile does not challenge. The district court found that Deputy Vogt called for backup officer Piccola, with his drug dog, before Cargile was even stopped and detained for the traffic violation, and that Piccola arrived only five minutes after the stop was effectuated. The court further found that, during those five minutes, Vogt went to Cargile's vehicle, spoke to her, obtained her driver's license and information, returned to his vehicle, ran a driver's license and warrants check, and received the results from dispatch. The district court also found that within eight minutes of the stop Vogt approached Cargile's vehicle for the second time to explain why he had stopped her vehicle and asked her to exit. When she refused that request, she was from that time forward lawfully detained and arrested for resisting and obstructing an officer. Based upon these findings, the district court concluded that the detention "was not expanded beyond the reasonable time for the traffic stop." The court's factual findings are supported by substantial and competent evidence and its conclusion is sound. Cargile has failed to show that the traffic infraction investigation was unlawfully prolonged.

6

Cargile also seems to assert, without much elaboration, that her detention became illegal because Vogt abandoned the traffic violation investigation and began to investigate whether she was in possession of illegal drugs, without reasonable suspicion to detain her on that basis. In *State v. Aguirre*, 141 Idaho 560, 564, 112 P.3d 848, 852 (Ct. App. 2005), this Court held that such a circumstance constitutes "an unconstitutional expansion of the traffic stop" warranting suppression of evidence. Cargile's argument is without merit, however, because the district court made factual findings to the effect that the traffic infraction investigation was never abandoned. Specifically, the court found that when Deputy Piccola arrived with the canine, the two officers spoke and determined that "while Piccola ran the canine around the vehicle, Vogt would finish up the traffic stop. Within eight minutes of the stop, Vogt returned to Cargile to tell her about her turn signal and the reason for the stop." Because Cargile does not challenge these factual findings, and because they are supported by substantial and competent evidence, she has not shown that the traffic infraction investigation was abandoned.

The investigation did not exceed the scope of its underlying justification, and thus, no Fourth Amendment violation occurred.

## B. Revocation of Probation and Execution of Sentence for Possession of Methamphetamine in Docket No. 38867

In Docket No. 38867, Cargile was on probation from a previous conviction for possession of methamphetamine when she was arrested and charged with the drug offenses in Docket No. 38855. Based upon the latter offenses, along with other violations, the State moved for revocation of probation and execution of the underlying unified sentence of five years, with one year fixed. After Cargile admitted the violations, the district court revoked probation, leaving the underlying term of imprisonment unchanged. On appeal, Cargile does not challenge the district court's decision to revoke probation, but argues only that the district court should have sua sponte reduced her sentence on revocation.

A court may, after a probation violation has been established, order that the suspended sentence be executed or, in the alternative, the court is authorized under Idaho Criminal Rule 35 to reduce the sentence. *Beckett*, 122 Idaho at 325, 834 P.2d at 327; *State v. Marks*, 116 Idaho 976, 977, 783 P.2d 315, 316 (Ct. App. 1989). We conclude that Cargile is barred from asserting on appeal that the court erred in executing the sentence without reduction because the court's action was requested by Cargile. At the disposition hearing, Cargile's counsel noted that the district courts in Docket Nos. 38855 and 38868 had already sentenced her to a unified term of

7

imprisonment of thirteen years with four years determinate for possession of methamphetamine with intent to deliver, and a consecutive unified sentence of four years with one year determinate for escape. In light of these circumstances, defense counsel in this case stated that "we are just asking the Court to go ahead and impose her sentence at this time." By this statement, counsel plainly was asking the court to simply order execution of Cargile's theretofore suspended sentence. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors that one has consented to or acquiesced in. *Id.* Here, the claimed error in not reducing the sentence was invited by Cargile, and we therefore will not consider it.

**C.      Sentence in Docket No. 38868**

Lastly, Cargile asserts on appeal that her sentence for escape, a unified term of four years with one year determinate, to be served consecutive to the sentence for possession with intent to deliver, is excessive.

Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

Cargile has a significant criminal history, including a prior felony conviction for possession of methamphetamine on which she was initially placed on probation. She was found in violation of probation on numerous occasions, primarily for testing positive for methamphetamine. The court eventually revoked her probation and sentenced her to a term in the penitentiary on retained jurisdiction. At the completion of this period, she was again placed on probation. While that probation was in place, she committed another felony, this time possession of methamphetamine with intent to deliver. She admitted to the presentence investigator that she was in the business of selling drugs and that she had a viable "business

8

plan" to earn $60,000 quickly in order to buy a parcel of real property in Washington state that she had her eye on.

In light of this record and the seriousness of her escape offense, Cargile has not shown that her sentence is excessive.

## III.

## CONCLUSION

The order denying Cargile's motion to suppress evidence in Docket No. 38855, the order revoking probation and executing the original sentence in Docket No. 38867, and the judgment of conviction and sentence in Docket No. 38868 are affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**