**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44651**

| | |
|---|---|
| STATE OF IDAHO, | ) 2017 Unpublished Opinion No. 619 |
| | ) |
| Plaintiff-Respondent, | ) Filed: October 11, 2017 |
| | ) |
| v. | ) Karel A. Lehrman, Clerk |
| | ) |
| VIRGIL LYNN NOTT, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for felony possession of a controlled substance, <u>affirmed</u>; order denying motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenevieve C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Virgil Lynn Nott appeals from his judgment of conviction for felony possession of a controlled substance. Nott contends the district court erred by denying his motion to suppress. He argues that the evidence was discovered pursuant to an unlawful detention. For the reasons explained below, the judgment of conviction and order denying Nott's motion to suppress are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court made the following findings of fact:

Officer [T.S.] is a Boise City bicycle patrol officer whose area of responsibility includes downtown Boise, the greenbelt along the Boise River and the Boise parks. His area also includes Cooper Court, a former homeless encampment, the homeless shelters and non-profits which serve the homeless community. His work involves frequent

1

contact with the homeless community. Early in the afternoon of June 2, 2016, Officer [T.S.] encountered Virgil Nott and a female friend at 15th Street and Washington, not far from the Albertson's at 15th and State. They were wearing backpacks and carrying a duffle. They looked new to town so he introduced himself. Mr. Nott told him that they had just arrived from Bellingham, Washington, had Section 8 vouchers and were hoping to find housing in Boise. Officer [T.S.] told them where the shelters were and where they could get food. Because they had a grocery sack with a six pack of cold beer in it, he told them that it was legal to drink in Ann Morrison Park but not the other parks and gave them directions to Ann Morrison Park. Mr. Nott told Officer [T.S.] that he had a medical marijuana card from Washington and was advised that marijuana use was not legal in Idaho. Officer [T.S.] then left.

Later in the same day, Officer [T.S.] saw Mr. Nott and his friend, Ms. Torres, at Rhodes Skate Park, a few blocks from where he had earlier encountered them. The park has had lots of trouble with both alcohol and drug use and illegal activity in the bathrooms so it is an area he frequently patrols. It is not legal to drink alcohol in Rhodes Skate Park. When he arrived he saw Ms. Torres coming out of a bathroom and drinking out of a beer can. He went to talk to her and she said she was not drinking beer but had put water in the can. He suggested a different container. He told her again that drinking was legal in Ann Morrison Park. He saw Mr. Nott and another man move towards a restroom. The park's restrooms are single stall/one occupant. He watched both of them look around and then go into one of the units. Mr. Nott was carrying the grocery sack with the beer in it. Officer [T.S.] went to the front of the restroom where he was joined by Ms. Torres. Officer [T.S.] reminded her that they had just discussed that alcohol use was only permissible in Ann Morrison Park, not the other parks, and asked why Mr. Nott was going into one of the restrooms. Ms. Torres said it was "weird" and that there might be something going on so Officer [T.S.] continued to wait outside of the restroom. Mr. Nott peeked out of the restroom, saw Officer [T.S.] and tried to close the door. Officer [T.S.] opened the door and directed both men to come out and sit down. He suspected illegal behavior was either occurring or about to occur. Both men sat down. Officer [T.S.] reminded Mr. Nott that they had already discussed that alcohol use was banned in all parks except for Ann Morrison. Mr. Nott immediately said that he had medical marijuana. Officer [T.S.] asked him to give it to him because he intended to give him a citation for marijuana possession. At that point, Mr. Nott tried to hide a baggie behind his legs after fumbling around for a while. Officer [T.S.] saw him trying to conceal the baggie and asked for it. It was a clear plastic baggie with a white powdery substance which Officer [T.S.] suspected was methamphetamine. At that point, Mr. Nott was arrested.

The State filed an information charging Nott with felony possession of a controlled substance, misdemeanor possession of a controlled substance, and possession of drug paraphernalia.

Nott moved to suppress the evidence discovered subsequent to his detention, arguing that the officer did not have reasonable suspicion to detain him. The district court denied the motion. Nott entered a conditional guilty plea to felony possession of a controlled substance, namely methamphetamine, reserving the right to appeal the district court's denial of his motion to

2

suppress. The State agreed to dismiss the two misdemeanor counts. The district court sentenced Nott to a unified sentence of three years with a minimum period of confinement of one year, commuted the sentence, and entered judgment. Nott timely appealed from the district court's judgment of conviction.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution protects citizens from unreasonable search and seizure.[1] U.S. CONST. amend. IV. Prior to *Terry v. Ohio*, 392 U.S. 1 (1968), any restraint on an individual amounting to a seizure under the Fourth Amendment was invalid unless justified by probable cause. *Dunaway v. New York*, 442 U.S. 200, 207-09 (1979). *Terry* created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there exists reasonable suspicion that a person has committed or is about to commit a crime. Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts. *Terry*, 392 U.S. at 30; *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish

---

[1] The Idaho Constitution offers protection for unlawful search and seizure, as well. IDAHO CONST. art. I, § 17. Although Nott acknowledges this, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Nott's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990). Still, reasonable suspicion requires more than a mere hunch. *Id.* at 329. Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the detention. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223.

The district court concluded that the officer had reasonable suspicion to believe criminal activity was about to be committed when he observed Nott and another man enter into a single occupant restroom while in possession of beer. This suspicion was only heightened by Nott's attempt to close the door when he saw the officer after peering out of the restroom. The district court also found that the restroom was located in a park known for alcohol and drug use. Additionally, the district court found that the officer had seen Nott's female friend exit a restroom stall holding an open beer can, though she explained that she had put water in the beer can.

Nott asserts that because it was not unlawful for him to possess beer, share a restroom stall with another man, or be present in a high-crime area, the officer did not have reasonable suspicion that he was about to engage in criminal activity. The United States Supreme Court has previously held that otherwise innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). Turning to the facts, it is not insignificant that Nott was in a park known for alcohol and drug use. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that a defendant's presence in a high-crime area was among the relevant contextual considerations in a *Terry* stop analysis). It is also suspicious that Nott, in possession of multiple beers, would enter a single occupant restroom with another man. Though there could be an innocent explanation for this odd conduct, an officer need not rule out the possibility of innocent conduct in order to develop reasonable suspicion. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002); *State v. Bordeaux*, 148 Idaho 1, 8, 217 P.3d 1, 8 (Ct. App. 2009). Additionally, evasive behavior, such as headlong flight, is a pertinent factor in determining reasonable suspicion. *Wardlow*, 528 U.S. at 124. Even if Nott's suspicious behavior and presence in a high-crime area did not provide the officer with reasonable suspicion, his evasive action of trying to shut the door on the officer most certainly did.

However, Nott contends that the officer's suspicions of illegal consumption of alcohol were dispelled by the cursory glance the officer took around the restroom after ordering Nott to

4

sit down outside, as the officer testified that he did not see any open containers. This argument ignores the fact that the purpose of a stop is not fixed at the time the stop is initiated. *State v. Parkinson*, 135 Idaho 357, 362, 17 P.3d 301, 306 (Ct. App. 2000). A detention initiated for one investigative purpose may disclose suspicious circumstances that justify expanding the investigation to other possible crimes. *State v. Brumfield*, 136 Idaho 913, 916, 42 P.3d 706, 709 (Ct. App. 2001). Thus, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify reasonable suspicion that the detained person is, has been, or is about to engage in criminal activity. *State v. Gomez*, 144 Idaho 865, 869, 172 P.3d 1140, 1144 (Ct. App. 2007). That the officer in this case could not say what specific criminal activity he suspected Nott of engaging in at this point in the detention is immaterial because reasonable suspicion does not require a belief that any *specific* criminal activity is afoot to justify an investigative detention; instead, all that is required is a showing of objective and specific articulable facts giving reason to believe that the individual has been or is about to be involved in *some* criminal activity. *State v. Perez-Jungo*, 156 Idaho 609, 615, 329 P.3d 391, 397 (Ct. App. 2014).

Assuming arguendo the officer was satisfied that no beer was being consumed, Nott's attempt to close the door on the officer provided the officer with reasonable suspicion that something criminal was happening. The fact that Nott had previously told the officer that he had a medical marijuana card, coupled with the fact he was in a single occupant bathroom with another man in a park known for drug activity, provided reasonable suspicion that Nott's furtive movements could have been drug related. *See State v. Holcomb*, 128 Idaho 296, 302, 912 P.2d 664, 670 (Ct. App. 1995). Whether the officer suspected Nott of potential drug activity or other criminal activity after ordering him out of the restroom, we conclude from the district court's factual findings that the officer had reasonable suspicion to continue Nott's detention.

## IV.
## CONCLUSION

In summary, the district court did not err in holding that Nott was not subjected to an unconstitutional seizure. Accordingly, the order denying Nott's motion to suppress and the judgment of conviction are affirmed.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

5