IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48808

| | | |
|---|---|---|
| STATE OF IDAHO | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2024 Term |
| | ) | |
| v. | ) | Opinion Filed: April 1, 2024 |
| | ) | |
| KEVIN JAMES VAN ZANTEN, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Scott L. Wayman, District Judge.

The district court's judgment of conviction is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, attorney for Appellant. Ben McGreevy argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Kale Gans argued.

———————————————————

BEVAN, Chief Justice.

Kevin James Van Zanten appeals his judgment of conviction for felony possession of methamphetamine and misdemeanor driving under the influence. Van Zanten argues that the district court erred in denying his motion to suppress evidence due to an unlawful stop of the commercial vehicle he was driving. According to Van Zanten, the stop was based on regulations adopted by the Idaho State Police resulting from an unconstitutional delegation of legislative power. For the reasons below, Van Zanten's judgment of conviction is affirmed.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

In September 2020, Idaho State Police Trooper Shane Grady, a specialist in the enforcement of laws governing the operation of commercial vehicles, observed a 2005 Kenworth truck driving in Kootenai County. Grady pulled beside the truck and saw that the Department of Transportation ("DOT") number was displayed improperly. The number was missing a "US"

1

designation before DOT (i.e., USDOT). Grady also noted that a bucket of hazardous material and two buckets of oil were unsecured near the front of the trailer. The truck was pulling a large, flatbed truck, a generator, an engine, and a radiator. The flatbed, engine, and radiator were likewise improperly secured. Grady initiated a traffic stop and identified the driver of the truck as Kevin Van Zanten. On stopping Van Zanten, Grady noted that his driving privileges were suspended. Van Zanten subsequently consented to an inspection of the truck.

Grady requested a driver's check through dispatch. Dispatch informed Grady that Van Zanten's license was suspended in three states (California, Oregon, and Montana), and his Commercial Driver's License was downgraded in Washington. Grady searched the truck for a logbook and uncovered a glass pipe with residue in the front pocket of a duffle bag. In the same duffle bag Grady located two plastic baggies containing a white crystal substance and green plant material. Grady identified the white substance as methamphetamine and the green plant material as marijuana. Van Zanten failed field sobriety tests and was arrested for felony possession of methamphetamine. After Van Zanten was placed in handcuffs, Grady searched Van Zanten and secured him in another officer's patrol car.

According to Grady, Van Zanten's speech was slurred, and his eyes were glassy. At the jail, Van Zanten provided two breath samples, which each rendered a 0.000% breath alcohol content (BrAC) result. Grady then called a drug recognition expert to perform an evaluation. Van Zanten provided a urine sample; the results of the urinalysis were later reported as positive for methamphetamine. Grady also tested the white crystal substance and the green plant material he discovered in Van Zanten's truck, which were presumptively positive for methamphetamine and marijuana.

### B. Procedural Background

Van Zanten was charged in two separate complaints in magistrate court. Van Zanten was bound over to district court and charged in one Information. He was charged with one count of possession of a controlled substance, (felony), and five misdemeanors: operating a commercial vehicle with a suspended or downgraded license, failing to maintain an adequate logbook, possession of drug paraphernalia, driving under the influence, and possession or use of drugs. Van Zanten was also alleged to be a persistent violator of the law for purposes of a sentencing enhancement. He moved to suppress all evidence obtained from the stop, arguing Grady had no legal basis to stop him. Van Zanten claimed that Grady initiated the stop to investigate state

regulations that were unenforceable because the statutes authorizing the promulgation of those regulations unconstitutionally delegated legislative power.

At the hearing on the motion to suppress, Grady testified that he had authority to enforce state and federal regulations related to the operation of motor carriers and commercial vehicles. Grady also testified he had the authority to initiate the stop under Idaho Code sections 67-2901A (failure to comply with safety rules) and 49-2206 (authorizing detention and inspection of vehicle when a peace officer has reason to believe it contains hazardous material or wastes). Van Zanten argued that both statutes authorizing promulgation of rules were unconstitutional delegations of legislative power.

The district court denied Van Zanten's motion. The court explained that "allowing the Idaho State Police and the administrative body within that organization to adopt these regulations and incorporate the federal regulations [was] constitutionally sound and no violation of the Idaho or United States Constitution." The district court elaborated:

> So I do not find based on that analysis that there has been an unconstitutional delegation of legislative authority by allowing the enforcement of those regulations.
>
> Even if we have a situation where there is somehow a finding that there is -- that the statute is an unconstitutional delegation of legislative authority, we have a situation where the police officer involved, Trooper Grady, is not the person that is going to be charged with making that determination. And to impose the exclusionary rule and suppress evidence based on a later determination by a court after the fact that for some reason the law regulation is unconstitutional does not mean that the evidence is required to be suppressed.
>
> Even if this court were to declare that the -- this was an unconstitutional delegation of legislative authority, and even if the traffic stop were based on these allegedly unconstitutional regulations, we'd have a situation much akin to an arrest that has been made by a police officer under a statute that is later found unconstitutional.

Pursuant to a plea agreement, Van Zanten entered conditional pleas of guilty to one count of felony possession of a controlled substance and one count of misdemeanor driving under the influence, reserving his right to appeal the district court's denial of his motion to suppress. In exchange for Van Zanten's guilty plea, the State dismissed the remaining charges and agreed not to pursue a persistent violator sentencing enhancement. For the felony possession charge, the district court imposed a unified sentence of five years with two years fixed. The court suspended that sentence and placed Van Zanten on probation for two years. On the misdemeanor conviction,

Van Zanten was sentenced to 180 days in jail with credit for sixteen days served. Additionally, Van Zanten's driving privileges were suspended for ninety days, and he was ordered to pay a fine. Van Zanten timely appealed.

## II. STANDARDS OF REVIEW

"Where this Court reviews a denial of a motion to suppress evidence, [it] appl[ies] a bifurcated standard of review." *State v. Lancaster*, 171 Idaho 236, 519 P.3d 1176, 1180 (2022) (citing *State v. Clarke*, 165 Idaho 393, 396, 446 P.3d 451, 545 (2019)). "Th[e] Court 'gives deference to the trial court's findings of fact, which will be upheld so long as they are not clearly erroneous.'" *Id.* (quoting *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009)). "Nevertheless, 'this Court freely reviews the trial court's application of constitutional principles in light of the facts found.'" *Id.* (quoting *Clarke*, 165 Idaho at 396, 446 P.3d at 454).

"Determinations of reasonable suspicion are reviewed de novo." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Morgan*, 154 Idaho 109, 111, 294 P.3d 1121, 1123 (2013)). "The review must be based on the totality of the circumstances rather than examining each of the officer's observations in isolation." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

## III. ANALYSIS

### A. The district court did not err in denying Van Zanten's motion to suppress.

Van Zanten challenges the district court's denial of his motion to suppress on three grounds: (1) Grady did not have reasonable suspicion to stop Van Zanten for violating Idaho Code section 67-2901A because the section is unenforceable as an unconstitutional delegation of legislative power; (2) Grady did not have reasonable suspicion to stop Van Zanten for violating Idaho Code section 49-2206 because the section is unenforceable as an unconstitutional delegation of legislative power; and, in the alternative, (3) Evidence obtained from the stop must be suppressed because Grady made a mistake of law..

The State proposes that this appeal can be resolved without determining whether the rulemaking provisions of section 67-2901A or section 44-206 are an unconstitutional delegation of legislative power because Grady had independent reasonable suspicion to stop Van Zanten without reliance on the challenged statutes. We agree, and as such, decline to reach the constitutionality of either statute. *See Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 522 P.3d 1132, 1214 (2023) (quoting *State ex rel. Kempthorne v. Blaine Cnty.*, 139 Idaho 348, 350, 79

4

P.3d 707, 709 (2003) ("[W]hen a case can be decided upon a ground other than a constitutional basis, the Court will not address the constitutional issue unless it is necessary for a determination of the case.")); *City of Idaho Falls v. HK Contractors, Inc.*, 163 Idaho 579, 585, 416 P.3d 951, 957 (2018) (declining to address argument that statute was unconstitutional as applied to appellant where issue could be resolved on other grounds); *Miller v. Idaho State Patrol*, 150 Idaho 856, 864, 252 P.3d 1274, 1282 (2011) ("The general rule of constitutional avoidance encourages courts to interpret statutes so as to avoid unnecessary constitutional questions."). As such, the sole question we will consider in this appeal is whether Grady identified specific, articulable facts giving rise to reasonable suspicion to stop Van Zanten. For the reasons articulated below, we conclude that Grady identified specific, articulable facts giving rise to reasonable suspicion to stop Van Zanten.

The Fourth Amendment to the United States Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 17 of the Idaho Constitution provides a similar guarantee:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

"The seizure of a vehicle's occupants in order to investigate a traffic violation is a 'reasonable seizure' . . . so long as the seizing officer had reasonable suspicion that a violation had occurred." *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016). "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *State v. Gonzales*, 165 Idaho 667, 673, 450 P.3d 315, 321 (2019). "Still, reasonable suspicion requires more than a mere hunch or 'inchoate and unparticularized suspicion.'" *Id*. "Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Id*. (quoting *State v. Bishop,* 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2008)). Indeed, "[r]easonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

During testimony at Van Zanten's motion to suppress hearing, Grady articulated three factors that provided him with reasonable suspicion to stop Van Zanten's vehicle:

> There were multiple reasons for that particular vehicle. It was a -- if I recall correctly, it was a 2005 Kenworth. [1] He had a trailer, and upon that trailer was another semi-truck that was being towed. The DOT number was not displayed properly on the vehicle being driven by Mr. Van Zanten. [2] The vehicle that was being towed was not tied down properly, and [3] there was also a bucket with a HAZMAT marking that was not secured on the trailer as well.

> [DEFENSE COUNSEL]: Are those three reasons the reasons why you pulled over the vehicle?

> [GRADY]: Those were the three that I noticed right away when I was pulled up next to him, yes.

Grady's observation of these factors, based on his specialized experience and training as a commercial vehicle specialist for the Idaho State Police, supplied him with the reasonable suspicion necessary to justify a stop. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (making reasonable suspicion determinations "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available").

Van Zanten argues that, to conduct a *Terry*[1] stop of a vehicle, there must be reasonable suspicion of a *criminal* violation. This argument, however, overlooks one of the missions of a traffic stop: safety. *See State v. Wharton*, 170 Idaho 329, 332, 510 P.3d 682, 685 (2022) (examining the mission of a traffic stop). The United States Supreme Court has explained that the "mission" of a traffic stop is: "[1] to address the traffic violation that warranted the stop, . . . and [2] [to] *attend to related safety concerns*[.]" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (emphasis added) (internal citation omitted). Van Zanten's argument also fails to recognize that addressing a criminal violation is not the main purpose of *most* traffic stops. *See S. Dakota v. Opperman*, 428 U.S. 364, 367–68 (1976) ("[i]n discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles," and "[m]ost of this contact is distinctly noncriminal in nature"); *Whren v. United States*, 517 U.S. 806, 808, 819 (1996) (upholding stop to enforce "civil traffic violation");

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

6

*United States v. Choudhry*, 461 F.3d 1097, 1102 (9th Cir. 2006) (rejecting argument that traffic stops require suspicion of criminal conduct).

Observing a commercial vehicle on the interstate with an unsecured bucket bearing a "hazardous material corrosive label" is well within the type of "related safety concerns" that a traffic mission is intended to focus on. *Rodriguez*, 575 U.S. at 349. Add to that the unsecured buckets of oil, and a large, flatbed truck, a generator, an engine, and a radiator that were likewise improperly secured, Specialist Grady had reason to stop Van Zanten for safety purposes. This is because law enforcement is vested with the responsibility of "prevent[ing] crime and *ensur[ing] public safety*." *State v. Bonner*, 167 Idaho 88, 95, 467 P.3d 452, 459 (2020) (emphasis added). The public interest in protecting safety outweighs the limited intrusion of stopping Van Zanten's vehicle.

> The Supreme Court has recognized police responsibility for public safety:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady v. Dombrowski*, 413 U.S. [433, 441 (1973)], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. *The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.*

*S. Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) (emphasis added).

We agree with this rationale. Addressing public safety concerns is a bedrock of the community caretaking doctrine, particularly for Idaho State Police officers like Specialist Grady who interact with commercial vehicles on a frequent basis. "The community caretaker function arises from the duty of police officers to help citizens in need of assistance." *State v. Hollist*, 170 Idaho 556, 561, 513 P.3d 1176, 1181 (2022) (quoting *State v. Page*, 140 Idaho 841, 844, 103 P.3d 454, 457 (2004)). The inherent danger associated with unsecured hazardous waste falls well within the confines of the community caretaking function for a commercial vehicle traveling on the public highway. Without proper security, such material poses a significant risk to public safety.

Under the community caretaking function, law enforcement has the authority to conduct a temporary seizure when a vehicle threatens public safety. *See, e.g.*, *State v. Maddox*, 137 Idaho

7

821, 824–26, 54 P.3d 464 (2002) (police may stop vehicle traveling off-road on motorcycle trail under community caretaking function depending on the circumstances; there must be a present need for assistance or other public interest to justify a stop); *Apodaca v. State, Tax and Revenue Dept.*, 118 N.M. 624, 626, 884 P.2d 515 (1994) (police officer may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring); *United States v. King*, 990 F.2d 1552, 1560 (10th Cir.1993) (brief detention of motorist in traffic gridlock to explain dangerous conditions and advise him to stop honking his car horn was proper exercise of community caretaking function).

We also view this case bearing in mind the nature of the vehicle Van Zanten was driving: a 54,000-pound Kenworth truck hauling a 70,000-pound trailer. While individuals already have a reduced expectation of privacy in automobiles, *California v. Carney*, 471 U.S. 386, 392-393 (1985), that expectation is further reduced when operating a commercial vehicle—like the Kenworth tractor trailer here. As the Ninth Circuit has explained, "[t]he privacy expectations of commercial truck drivers are markedly less than those of the public in general. The trucking industry is highly regulated and drivers have long been subjected to federal regulation of their qualifications." *United States v. Orozco*, 858 F.3d 1204, 1208 (9th Cir. 2017) (quoting *United States v. Delgado*, 545 F.3d 1195, 1201, n.3 (9th Cir. 2008)). Commercial motor vehicles, particularly those carrying hazardous waste, are what courts have declared a "pervasively regulated industry." *Delgado*, 545 F.3d at 1202. Both Idaho and the federal government have a substantial governmental interest in regulating them for the public's safety. And

> [b]ecause the industry is so mobile, surprise is an important component of an efficacious inspection regime. Fairly measured, the interests justifying warrantless searches in the interstate trucking industry are even greater than those present in [*New York v. Burger*, 482 U.S. 691 (1987),] (which involved the regulation of junkyards) because of the speed with which commercial vehicles move from place to place. And, finally, because violations of the regulatory scheme often are not apparent to a patrolling officer, inspections are sometimes the only way in which violations can be discovered. We conclude, therefore, that effective enforcement of the regulatory regime would be impossible in the absence of impromptu inspections.

*United States v. Maldonado*, 356 F.3d 130, 135-36 (1st Cir. 2004) (internal citations omitted).

The district court here determined that Grady's traffic stop was "basically seeking to enforce . . . regulations, in particular[,] the hazardous material regulation, [and] constitutes a reasonable and articulable suspicion that the vehicle being driven by Mr. Van Zanten was being

driven in violation of those rules." Consistent with the district court's conclusion, we hold that Grady articulated several justifications for stopping Van Zanten; those reasons amount to reasonable suspicion to stop Van Zanten, independent of whether sections 67-2901A or 49-2206 are unconstitutional. Because we conclude that Grady had reasonable suspicion to stop Van Zanten, we affirm the district court's decision without considering the constitutionality of either statute.

## IV. CONCLUSION

The district court's judgment of conviction is affirmed.

JUSTICES BRODY, MOELLER, ZAHN and MEYER CONCUR.