760 P.2d 1162

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Judy THOMPSON, Defendant–Respondent,**

and

**Rene Brown, Rebecca Nelson a/k/a Wolf and Lumen, Steve Wolf, Charlie Thompson, James Yarborough a/k/a Yarb, and Monte Brandt, Defendants.**

No. 17308.

Supreme Court of Idaho.

Aug. 2, 1988.

Jim Jones, Atty. Gen., and Lynn E. Thomas (argued), Sol. Gen., Boise, for plaintiff-appellant.

Vernon K. Smith, Boise, for defendant-respondent.

JOHNSON, Justice.

Appellant, Judy Thompson, seeks review of a decision of the Idaho Court of Appeals in *State v. Thompson,* 113 Idaho 466, 745 P.2d 1087 (Id.App.1987), which reversed an order of the district court suppressing evidence obtained by means of a wiretap of Thompson's telephone. We affirm the decision of the Court of Appeals except its holdings that the installation of a pen register on Thompson's telephone line did not constitute a search within the meaning of art. 1, § 17 of the Idaho Constitution, and that there was probable cause for issuing the wiretap orders. We hold that the use of a pen register is a search under art. 1, § 17 of the Idaho Constitution, that the evidence produced by the pen register should not have been considered in the issuance of the wiretap orders, and that without the pen register evidence there was no probable cause to issue the wiretap orders. Therefore, we reverse the decision of the Court of Appeals on these issues and affirm the order of the district court suppressing the evidence obtained from the wiretap of Thompson's telephone.

## I.

IN INTERPRETING ART. 1, § 17 OF THE IDAHO CONSTITUTION THIS COURT IS NOT BOUND BY THE INTERPRETATIONS OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE UNITED STATES SUPREME COURT.

Art. 1, § 17 of the Idaho Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

This section of our constitution is substantially the same as the fourth amendment to the constitution of the United States.

The United States Supreme Court has held that the installation of a pen register is not a search within the meaning of the fourth amendment. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). This Court has previously noted that art. 1, § 17 of our constitution "is to be construed consistently with the fourth amendment to the United States Constitution." *State v. Cowen,* 104 Idaho 649, 650, 662 P.2d 230, 231 (1983). *See also, State v. Rice,* 109 Idaho 985, 989, 712 P.2d 686, 690 (Id.App.1985), *rev. den.* (1986). However, this statement does not bear on our decision in this case, since the portion of the decision in *Cowen* where it appears concerned the standing of a person to raise the question of unreasonable search and seizure, and not the substance of the rights protected under art. 1, § 17. Seven months after *Cowen,* we voiced our willingness to consider whether the scope of art. 1, § 17 is different than that of the fourth amendment, as interpreted by the United States Supreme Court:

> [T]he guarantee against unreasonable search and seizure in article I, § 17 of the Idaho Constitution is substantially the same as the parallel provisions of the Fourth Amendment to the United States Constitution; nevertheless, it is for this Court to decide whether to relax the standard for the demonstration of probable cause in accord with [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ], or whether to retain the more protective criteria of *Agiular* and *Spinelli* and their progeny as our test.

*State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983).

Twice more since *Cowen* this Court has pointed out that in interpreting art. 1, § 17 we are not bound by the interpretations of the fourth amendment by the United States Supreme Court. *State v. Newman,* 108 Idaho 5, 10 n. 6, 696 P.2d 856, 861 n. 6 (1985); and *State v. Johnson,* 110 Idaho 516, 520 n. 1, 716 P.2d 1288, 1292 n. 1 (1986). As we said in *Newman:*

> [F]ederal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. *See Oregon v. Haas,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975). This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.

108 Idaho at 10 n. 6, 696 P.2d at 861 n. 6.

Today we reaffirm that in interpreting provisions of our constitution that are similar to those of the federal constitution we are free to extend protections under our constitution beyond those granted by the United States Supreme Court under the federal constitution.

## II.

## THE USE OF A PEN REGISTER IS A SEARCH UNDER ART. 1, § 17 OF THE IDAHO CONSTITUTION.

■ In its decision in this case the Court of Appeals used the term "pen register" to refer to a device that is used to record the numbers called on a telephone and to a "dialed number recorder" (DNR) that also records the duration of all calls. The Court of Appeals noted that from the record "it appears that the equipment installed to monitor Thompson's phone actually was a DNR rather than a pen register," but that "the impact of the two devices on the target's privacy is generally similar." We adopt the style of the Court of Appeals in

referring to the equipment installed on Thompson's telephone as a pen register. As the Court of Appeals also noted, a pen register " 'does not overhear oral communications and does not indicate whether calls are actually completed.' *United States v. New York Telephone Co.*, 434 U.S. 159, 161 n. 1, 98 S.Ct. 364, 366–67 n. 1, 54 L.Ed.2d 376 (1977)." 113 Idaho at 468 n. 1, 475 P.2d at 1089 n. 1.

This Court long ago pointed out that the fourth amendment " 'was intended as a restraint upon the activities of sovereign authority,' " and that "the same intention prompted the adoption of the provisions of our state constitution, 'to secure the people against unauthorized official action.' " *State v. Arregui*, 44 Idaho 43, 67, 254 P. 788, 812 (1927).

Both the fourth amendment and art. 1, § 17 protect "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." This Court has stated that the purpose of both provisions "is to safeguard the privacy of citizens by insuring against the search of premises where probable cause is lacking." *State v. Yoder*, 96 Idaho 651, 653, 534 P.2d 771, 773 (1975). In applying art. 1, § 17, we have accepted more refined statements of this purpose by the United States Supreme Court:

> [T]he Fourth Amendment and art. 1, § 17 are designed to protect a person's legitimate expectation of privacy, which "society is prepared to recognize as reasonable." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), *quoting Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *accord, [State v.] Bottelson*, [102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981) ].

*State v. Johnson*, 110 Idaho 516, 523 n. 5, 716 P.2d 1288, 1295 n. 5, (1986).

In *Smith v. Maryland, supra,* the United States Supreme Court concluded that the person on whose telephone line the pen register was installed "in all probability entertained no actual expectation of privacy in the phone numbers he dialed, and that, even if he did, his expectation was not 'legitimate.' " 442 U.S. at 745, 99 S.Ct. at 2583. Therefore, the Court held there was no search, and no warrant was required. We recognize that so far as the protection provided by the fourth amendment is concerned, both state courts and lower federal courts are bound by *Smith*. We are convinced, however, that in Idaho there is a legitimate and reasonable expectation of privacy in the phone numbers that are dialed.

We find persuasive the analysis of Justice Stewart in his dissent in *Smith*, in which Justice Brennan joined:

> I am not persuaded that the numbers dialed from a private telephone fall outside the constitutional protection of the Fourth and Fourteenth Amendments.
>
> In *Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, the Court acknowledged the "vital role that the public telephone has come to play in private communication[s]." The role played by a private telephone is even more vital, and since *Katz* it has been abundantly clear that telephone conversations carried on by people in their homes or offices are fully protected by the Fourth and Fourteenth Amendments. As the Court said in *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752, "the broad and unsuspected governmental incursions into conversational privacy which electronic surveillance entails necessitate the application of Fourth Amendment safeguards." (Footnote omitted.)
>
> Nevertheless, the Court today says that those safeguards do not extend to the numbers dialed from a private telephone, apparently because when a caller dials a number the digits may be recorded by the telephone company for billing purposes. But that observation no more than describes the basic nature of telephone calls. A telephone call simply cannot be made without the use of telephone company property and without payment to the company for the service. The telephone conversation itself must be electronically transmitted by telephone

company equipment, and may be recorded or overheard by the use of other company equipment. Yet we have squarely held that the user of even a public telephone is entitled "to assume that the words he utters into the mouthpiece will not be broadcast to the world." *Katz v. United States, supra,* 389 U.S., at 352, 88 S.Ct., at 512.

The central question in this case is whether a person who makes telephone calls from his home is entitled to make a similar assumption about the numbers he dials. What the telephone company does or might do with those numbers is more relevant to this inquiry than it would be in a case involving the conversation itself. It is simply not enough to say, after *Katz,* that there is no legitimate expectation of privacy in the numbers dialed because the caller assumes the risk that the telephone company will disclose them to the police.

I think that the numbers dialed from a private telephone—like the conversations that occur during a call—are within the constitutional protection recognized in *Katz.* (Footnote omitted.) It seems clear to me that information obtained by pen register surveillance of a private telephone is information in which the telephone subscriber has a legitimate expectation of privacy. (Footnote omitted.) The information captured by such surveillance emanates from private conduct within a person's home or office—locations that without question are entitled to Fourth and Fourteenth Amendment protection. Further, that information is an integral part of the telephonic communication that under *Katz* is entitled to constitutional protection, whether or not it is captured by a trespass into such an area.

The numbers dialed from a private telephone—although certainly more prosaic than the conversation itself—are not without "content." Most private telephone subscribers may have their own numbers listed in a publicly distributed directory, but I doubt there are any who would be happy to have broadcast to the world a list of the local or long distance numbers they have called. This is not because such a list might in some sense be incriminating, but because it easily could reveal the identities of the persons and the places called, and thus reveal the most intimate details of a person's life. 442 U.S. at 746–48, 99 S.Ct. at 2583–84.

We are also persuaded by portions of the dissent of Justice Marshall in *Smith,* with whom Justice Brennan joined also:

In my view, whether privacy expectations are legitimate within the meaning of *Katz* depends not on the risks an individual can be presumed to accept when imparting information to third parties, but on the risks he should be forced to assume in a free and open society. By its terms, the constitutional prohibition of unreasonable searches and seizures assigns to the judiciary some prescriptive responsibility. As Mr. Justice Harlan, who formulated the standard the Court applies today, himself recognized: "[s]ince it is the task of the law to form and project, as well as mirror and reflect, we should not ... merely recite ... risks without examining the desirability of saddling them upon society." *United States v. White, supra,* 401 U.S. [745] at 786, 91 S.Ct. [1122] at 1143 [28 L.Ed.2d 453 (1971)] (dissenting opinion). In making this assessment, courts must evaluate the "intrinsic character" of investigative practices with reference to the basic values underlying the Fourth Amendment. *California Bankers Assn. v. Shultz,* 416 U.S. [21] at 95, 94 S.Ct. [1494] at 1534 [39 L.Ed.2d 812 (1974)] (MARSHALL, J., dissenting). And for those "extensive intrusions that significantly jeopardize [individuals'] sense of security ... more than self-restraint by law enforcement officials is required." *United States v. White, supra,* 401 U.S., at 786, 91 S.Ct., at 1143 (Harlan, J., dissenting.)

The use of pen registers, I believe, constitutes such an extensive intrusion. To hold otherwise ignores the vital role telephonic communication plays in our personal and professional relationships, *see Katz v. United States,* 389 U.S., at

352, 88 S.Ct., at 511, as well as the First and Fourth Amendment interests implicated by unfettered official surveillance. Privacy in placing calls is of value not only to those engaged in criminal activity. The prospect of unregulated governmental monitoring will undoubtedly prove disturbing even to those with nothing illicit to hide. Many individuals, including members of unpopular political organizations or journalists with confidential sources, may legitimately wish to avoid disclosure of their personal contacts. *See NAACP v. Alabama,* 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed. 2d 1488 (1958); *Branzburg v. Hayes,* 408 U.S. 665, 695, 92 S.Ct. 2646, 2663, 33 L.Ed.2d 626 (1972); *id.,* at 728–734, 92 S.Ct., at 2673–2676 (STEWART, J., dissenting). Permitting governmental access to telephone records on less than probable cause may thus impede certain forms of political affiliation and journalistic endeavor that are the hallmark of a truly free society. Particularly given the Government's previous reliance on warrantless telephonic surveillance to trace reporters' sources and monitor protected political activity, (Footnote omitted.) I am unwilling to insulate use of pen registers from independent judicial review.

Just as one who enters a public telephone booth is "entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world," *Katz v. United States, supra,* 389 U.S., at 352, 88 S.Ct., at 512, so too, he should be entitled to assume that the numbers he dials in the privacy of his home will be recorded, if at all, solely for the phone company's business purposes. Accordingly, I would require law enforcement officials to obtain a warrant before they enlist telephone companies to secure information otherwise beyond the government's reach.

*Smith v. Maryland,* 442 U.S. 747–48, 99 S.Ct. at 2583–84.

We adopt these dissenting comments in *Smith* as stating the interpretation that should be given to art. 1, § 17 of the Idaho Constitution as it applies to the use of pen registers in Idaho. Perhaps the day will come when a majority of the United States Supreme Court will decide to overrule *Smith* and establish for the nation the protection to which we believe those who use telephones in Idaho are entitled. Until then, art. 1, § 17 will stand as a bulwark against the intrusions of pen registers into our daily life in Idaho.

### III.

### THE DISTRICT COURT CORRECTLY SUPPRESSED THE EVIDENCE OBTAINED FROM THE WIRETAP.

■ Since there was no warrant based on probable cause for the installation and use of the pen register in this case, the information obtained by its use should have been excluded from the determination of probable cause for the issuance of the wiretap orders. *State v. Johnson,* 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986). The question with which we are then presented is whether without the pen register information there was sufficient evidence to establish probable cause for the wiretap. The state itself acknowledges:

> Without [the pen register], the police in this case would not have been able to develop probable cause for the wire tap which eventually produced sufficient evidence to justify a charge against Judy Thompson and her coconspirators.

Appellant's Brief on Petition for Review, p. 18.

Two wiretap orders were issued by the district court authorizing the wiretap of Thompson's telephone. The affidavit that was offered in support of the application for the first wiretap order stated that the data obtained from the pen register installed on Thompson's telephone line indicated that Thompson was contacting a residence in the Twin Falls area where a drug supplier lived or frequented. The affidavit also stated that the pen register data indicated that Thompson was contacting females who were making visits to the Idaho State Penitentiary, the location where the law enforcement authorities believed drugs were being delivered. In addition, the affidavit indicated that the data obtained from

the pen register showed a high frequency of phone use by Thompson—1,100 calls in 43 days, excluding calls to or from Thompson's place of work. The officer making the affidavit concluded that Thompson's phone activity was comparable to the frequency of calls of other drug traffickers and that Thompson was using the telephone to distribute or sell illicit drugs.

Other than this information that was the result of the use of the pen register, there was no information contained in the affidavit indicating that Thompson was using her telephone to conduct any drug-related activities. The officer who made the affidavit stated parenthetically:

> (Because of the large geographical distances between Judy Thompson and her probable source of illicit drugs in the Twin Falls area, the likelihood of the use of the telephone to conduct transactions increases.)

The affidavit also stated:

> Through various other independent sources of information, we have confirmed that ... Judy Thompson is using the telephone or telephone devices to transmit types, quantities and prices and/or any other means used to distribute or sell illicit drugs.

No further identification of these "various other independent sources of information" or their reliability was contained in the affidavit.

The affidavit offered in support of the second wiretap order alleged as a basis for the extension of the wiretap for another thirty days that during the period covered by the first order calls had been intercepted indicating an on-going conspiracy between Thompson, the drug supplier in Twin Falls and others to supply Thompson with marijuana, which she would then distribute to others, including those who would smuggle the marijuana into the Idaho State Penitentiary.

Thompson's motion to suppress sought suppression of the information obtained through the wiretaps resulting from both the orders. Since the second order was based on the information produced by the first order, we must determine if the first order was properly issued. If it was not, none of the information obtained by the wiretaps was admissible, since the basis for the second would be tainted by the illegality of the first. *State v. Johnson, supra.* On the other hand, if the first order was valid, none of the information obtained through the two orders should be suppressed.

■ We have adopted the "totality of circumstances" analysis as the standard by which probable cause will be determined in Idaho. *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). This approach is appropriate for determining probable cause under the Idaho wiretap statute, I.C. §§ 18–6701 through 18–6708.

■ Before a judge may enter an *ex parte* wiretap order under this wiretap statute, the judge must determine "on the basis of the facts submitted by the applicant" that there is probable cause:

1. "for belief that an individual has committed, or is about to commit a particular offense enumerated in section 18–6706, Idaho Code;" (I.C. § 18–6708(3)(a))

2. "for belief that particular communications concerning the offense will be obtained through [the wiretap] interception;" (I.C. § 18–6708(3)(b)) and

3. "for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." (I.C. § 18–6708(3)(d))

In *Lang, supra,* we held that in reviewing findings of a judge who issued a warrant, "our function is limited to ensuring that the [judge] had a substantial basis for concluding that probable cause existed" and that "great deference is to be paid such determinations by reviewing courts." 105 Idaho at 684, 672 P.2d at 562.

Reviewing the affidavit of the officer in support of the first wiretap order we conclude that the district judge had a substan-

tial basis for belief that Thompson had committed, or was about to commit, the crime of dealing in marijuana, one of the offenses enumerated in I.C. § 18–6706. Excluding the information obtained through the use of the pen register, we conclude that there was not a substantial basis for belief that "particular communications concerning the offense" would be obtained through the wiretap or that Thompson's phone was being used, or was about to be used, "in connection with the commission of the offense," as required by I.C. §§ 18–6708(3)(b) and (d). The parenthetical comment of the officer that there was "likelihood" that Thompson and her Twin Falls source might use the telephone to conduct transactions is only speculation and does not create a substantial basis for probable cause. Also, the statement of the officer that "various other independent sources of information" confirmed that Thompson was using her telephone for dealing in marijuana is not a substantial basis for probable cause, since there is no indication of the veracity, reliability or source of knowledge of these other sources. As this Court pointed out in *State v. Johnson, supra,* even under the "totality of circumstances" test, the veracity, reliability and basis of knowledge of the persons supplying hearsay information " 'are all highly relevant in determining the value of his report' " and in making the determination of probable cause, the judge's " ' *action cannot be a mere ratification of the bare conclusions of others.*' " 110 Idaho at 527 n. 13, 716 P.2d at 1299 n. 13. (*Quoting Illinois v. Gates,* 462 U.S. 213, 229 and 238–239, 103 S.Ct. 2317, 2327, and 2332, 76 L.Ed. 527 (1983)). (Emphasis in original.)

We concur with the analysis of the state that "[w]ithout [the pen register], the police in this case would not have been able to develop probable cause for the wiretap." We reverse the decision of the Court of Appeals on this issue and affirm the suppression order of the district court.

## IV.

### CONCLUSION.

The decision of the Court of Appeals is affirmed, except as to whether the use a pen register is a search within the meaning of art. 1, § 17 and as to the determination of probable cause for the issuance of the wiretap orders. We affirm the order of the district court suppressing the evidence obtained through the wiretap of Thompson's telephone.

BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, dissenting:

The majority opinion impermissibly expands the scope of Art. 1, § 17, of the Idaho Constitution. Accordingly, I dissent.

By their very terms, the fourth amendment to the United States Constitution, and Art. 1, § 17, of the Idaho Constitution, apply only to "the right of the people to be secure in their *persons, houses, papers and effects.*" (Emphasis added.) Nothing else is accorded constitutional protection. There is no basis for the application of exclusionary sanctions in cases to which the protection against unreasonable searches and seizures was not meant to extend, *i.e.,* to anything beyond "persons, houses, papers and effects." Nothing in this language has any applicability to pen registers.

The United States Supreme Court has, on several occasions, reiterated that the fourth amendment is not addressed to places or things not mentioned in the language of the amendment. Initially, in *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), Justice Holmes succinctly stated:

"The special protection afforded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."

More recently, in *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the Court held that the reason there was no recognizable privacy interest in open fields is that they are not houses or effects within the meaning of the language of the fourth amendment.

It is axiomatic that the number recording functions of the telephone company's switching equipment did not search or seize Judy Thompson's "persons, houses, [or] papers." In like manner, neither did the telephone company's switching equipment search or seize Judy Thompson's "effects." For purposes of the fourth amendment to the United States Constitution, and Art. 1, § 17, of the Idaho Constitution, an "effect" is not a dialed telephone number. Rather, "effects" are tangible property or chattels. Black's Law Dictionary defines "effects" as follows:

> "**Effects.** Personal estate or property; though the term may include both real and personal property. See **Personal effects.**" Black's Law Dictionary 462 (5th Ed.1979).

> "**Personal effects.** Articles associated with person, as property having more or less intimate relation to person of possessor; 'effects' meaning movable or chattel property of any kind. Usual reference is to the following items owned by a decedent at the time of death: clothing, furniture, jewelry, stamp and coin collections, silverware, china, crystal, cooking utensils, books, cars, televisions, radios, etc." *Id.* at 1029.

Under any straightforward reading of the plain language of the two constitutional provisions at issue, neither is applicable to the numbers recorded by a pen register at the offices of the telephone company. A dialed telephone number simply is not a person, a house, a paper or an effect. Yet the majority holds, in contradiction to the United States Supreme Court's decision in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), that Art. 1, § 17, of the Idaho Constitution, is applicable to the case at bar.

Carrying the majority's holding to its logical end would necessitate a conclusion that there is constitutional protection for almost any evidence of a crime that the one suspected of that crime has not previously taken affirmative steps to display to the public. Neither the language in the fourth amendment to the United States Constitution, nor Art. 1, § 17, of the Idaho Constitution, can reasonably be construed to apply to pen registers as used in this case, as the United States Supreme Court has clearly held. The protection against unreasonable searches and seizures is limited to "persons, houses, papers and effects." Universal application was never intended.

The majority extends a new privilege where none existed before. Under the majority's holding, Art. 1, § 17, protects more than what one personally retains or controls; it also protects what has voluntarily been placed in the hands of third parties. This new privilege of protecting what has been exposed to the telephone company is not a matter of protecting one's person, papers, house or effects. Rather, it is a departure from the clear wording of the constitutional provisions at issue and is, in effect, a judicial amendment to the Idaho Constitution. There is no justification for expanding fourth amendment (or Art. 1, § 17, Idaho Constitution) protections to pen registers. These devices do nothing but record data that telephone subscribers well know is not kept in confidence. There is not even a subjective expectation of privacy in dialing data, especially long distance data like that involved here, as such are permanently recorded for monthly billing purposes. Yet the majority holds otherwise and by its holding finds a legitimate expectation of privacy in everything that a person has not taken affirmative steps to display to the public. This is an impermissible expansion of Art. 1, § 17, of the Idaho Constitution.

That is not to say that the legislature could not or should not, in its considered judgment, limit or prohibit by law the use of pen registers just as some legislatures have limited or prohibited the use of telephone taps, *i.e.*, actually listening to or recording telephone conversations. But the Constitution does not give any authority for this Court to legislate, as it has in effect done in this case.

Accordingly, I dissent.

SHEPARD, C.J., concurs.