**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 50707**

| | | |
|---|---|---|
| **STATE OF IDAHO** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, May 2025 Term** |
| **v.** | ) | |
| | ) | **Opinion Filed: June 27, 2025** |
| **AMANDA JOAN FLETCHER** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The order of the district court denying the motion to suppress is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jenny Swinford argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark W. Olson argued.

———————————————————

BEVAN, Chief Justice.

Amanda Fletcher appeals the district court's denial of her motion to suppress methamphetamine and drug paraphernalia found when officers searched her car after a drug dog alerted during an exterior sniff of her vehicle. Fletcher was on probation at the time of the arrest and had waived her Fourth Amendment rights. On appeal, Fletcher argues that Article 1, Section 17 of the Idaho Constitution provides greater protection for dog sniffs and searches than the Fourth Amendment to the United States Constitution. We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 3:00 a.m. on July 23, 2022, Officer Biagi, a Garden City police officer, noticed a vehicle parked outside of a convenience store. The store was open and the vehicle was lawfully parked. Biagi decided to run the vehicle's license plate number through the State's database and discovered that Amanda Fletcher had been in the car during a previous encounter with police. Biagi also learned that Fletcher had a warrant for her arrest for an alleged probation

1

violation. Biagi viewed a picture of Fletcher's face and learned she had a distinctive tattoo on her lower back.

Biagi used binoculars to observe Fletcher exit her vehicle and saw the tattoo on her back. Biagi then arrested Fletcher pursuant to the warrant and requested a drug detection dog for an exterior sniff of the vehicle. Biagi asked Fletcher for consent to search the vehicle, but she refused. Fletcher was handcuffed and placed in the back of a police vehicle.

Corporal Canfield was on scene at the time of arrest with Cano, a drug detection dog. Cano began to sniff the exterior of the vehicle and immediately sat down by the driver's door. Canfield tried to get him to move to continue the search, but he remained seated. Canfield believed that Cano had alerted to the presence of drugs, so the officers searched the vehicle and found suspected methamphetamine and other paraphernalia. Unknown to the officers at that time, Fletcher's probation agreement contained the following clause:

> I consent to the search of my person, residence, vehicle, personal property, and other real property or structures owned or leased by me, or for which I am the controlling authority, conducted by any agent of the IDOC or law enforcement officer. I hereby waive my rights under the Fourth Amendment, and the Idaho Constitution concerning searches.

The State charged Fletcher with felony possession of methamphetamine and misdemeanor possession of paraphernalia. Fletcher moved to suppress all evidence obtained from her vehicle, arguing that the search was unlawful under the Idaho Constitution. Specifically, Fletcher argued that Article 1, Section 17 of the Idaho Constitution provides greater protection for drivers and automobiles than the Fourth Amendment to the United States Constitution provides. Fletcher also maintained that technological advances have undermined the historical justifications for the automobile exception to the warrant requirement. Because warrants can be more readily obtained by law enforcement, she argued there are fewer exigent circumstances that justify a warrantless search of an automobile. Fletcher further contended that the State had not proven that the automobile exception applied in this case. Finally, Fletcher suggested that drug dog sniffs should be considered a search under Idaho's Constitution.

The State pointed out that Fletcher had already been convicted in another case and was on probation. Fletcher had agreed to terms of probation, including the previously mentioned waiver of her rights concerning searches. The State argued Fletcher's waiver precluded any constitutional arguments, that Idaho's Constitution does not provide heightened protection relating to the automobile exception, that dog sniffs are not searches, and that the automobile exception applied.

2

The district court denied Fletcher's motion to suppress based on the consent to search contained in her probation agreement. Fletcher entered a conditional guilty plea reserving the right to appeal the denial of her motion. Fletcher was sentenced to seven years with two years fixed. Her sentence was suspended, and she was placed on probation for seven years. Fletcher timely appealed.

## II. ISSUES ON APPEAL

1.      Whether dog sniffs are searches under Article 1, Section 17 of the Idaho Constitution.

2.      Whether Article 1, Section 17 of the Idaho Constitution provides a heightened standard for the automobile exception to the warrant requirement.

3.      Whether the district court erred when it denied Fletcher's motion to suppress.

## III. STANDARD OF REVIEW

When reviewing an order denying a motion to suppress, this Court defers to the trial court's findings of fact unless they are clearly erroneous and exercises free review over the trial court's application of constitutional principles to the facts found. *State v. Van Zanten*, 173 Idaho 620, ___, 546 P.3d 163, 166 (2024).

## IV. ANALYSIS

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Idaho's Constitution includes a nearly identical provision: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated . . . ." IDAHO CONST. art. 1, § 17. In general, we interpret these two provisions consistently with one another. "There is merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart— Article I, [Section] 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public." *State v. Charpentier*, 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998). That said, the "state constitution, the unique nature of the state, or Idaho precedent" may show that a "different analysis applies." *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 383, 299 P.3d 186, 190 (2013).

A.      **Exterior sniffs of a vehicle by a drug dog are not searches under Article 1, Section 17 of the Idaho Constitution.**

Below, and on appeal, Fletcher argues that drug dog sniffs of the exterior of a vehicle should be considered a search under Article 1, Section 17 of the Idaho Constitution. Specifically,

Fletcher points out that this Court previously held that pen registers constitute a search under Idaho's Constitution despite a contrary ruling from the United States Supreme Court interpreting the Fourth Amendment. She then compares a drug dog to the thermal imaging device used in *Kyllo v. United States*, 533 U.S. 27 (2001). Fletcher turns to out-of-state authority and points out that this Court would not be alone in concluding a drug dog sniff is a search. Finally, Fletcher argues that if drug dog sniffs are searches, they must be supported by reasonable, articulable suspicion.

Although the wording of Article 1, Section 17, and the Fourth Amendment is nearly identical, "[t]he similarity of language and purpose . . . does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution." *State v. Donato*, 135 Idaho 469, 471, 20 P.3d 5, 7 (2001). Fletcher argues that this Court's precedent supports the conclusion that drug dog sniffs are searches. *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997) (holding that "curtilages" are broader in Idaho); *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (rejecting good faith exception to exclusionary rule under Art. 1, § 17); *State v. Henderson*, 114 Idaho 293, 756 P.2d 1057 (1988) (prohibiting warrantless roadblocks to detect drunk driving under Art. 1, § 17); *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988) (holding pen registers unconstitutional under Art. 1, § 17). Specifically, she argues that drug dog sniffs intrude on an individual's expectation of privacy and that *Thompson* is particularly instructive.

In *Thompson*, this Court adopted dissenting opinions in *Smith v. Maryland*, 442 U.S. 745 (1979), and held that pen registers constitute a search under Article 1, Section 17 of the Idaho Constitution. 114 Idaho 746, 751, 760 P.2d 1162, 1167. A pen register records the phone numbers dialed from a particular device, but in *Thompson*, the pen registers also recorded the duration of each call. *Id.* at 748, 760 P.2d at 1164. The *Thompson* Court concluded that Idahoans had an expectation of privacy in the phone numbers that are dialed and noted the "vital role" that the telephone serves in private communications. *Id.* at 749, 760 P.2d at 1165 (quoting *Smith*, 442 U.S. at 746 (1979) (Stewart, J., dissenting)). The *Thompson* majority also expressed concern that the information captured from a pen register "emanates from private conduct" within locations entitled to Fourth Amendment protection. *Id.* at 750, 760 P.2d at 1166 (quoting *Smith*, 442 U.S. at 747 (Stewart, J., dissenting)). It also noted that "privacy in placing calls" is not only valuable to criminals, but also to those "with nothing illicit to hide." *Id.* at 751, 760 P.2d at 1167 (quoting *Smith*, 442 U.S. at 751 (Marshall, J., dissenting)).

4

Drug dog sniffs do not implicate the same concerns expressed in *Thompson*. "[A]ny interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband compromises no legitimate privacy interest." *State v. Randall*, 169 Idaho 358, 366, 496 P.3d 844, 852 (2021) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). Therefore, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. at 410. A person in Idaho may have a legitimate expectation of privacy in their car. *See State v. Howard*, 169 Idaho 379, 382, 496 P.3d 865, 868 (2021). Even so, that expectation of privacy in vehicles is much lower than the expectation of privacy one has in her home or office. *See California v. Carney*, 471 U.S. 386, 391 (1985); *see also Van Zanten*, 173 Idaho at 625–26, 546 P.3d at 168–69. Further, the privacy interest does not include the possession of contraband. *Howard*, 169 Idaho at 382, 496 P.3d at 868 (citing *Caballes*, 543 U.S. at 408). Thus, Fletcher's argument fails because while law-breaking and law-abiding citizens have legitimate expectations of privacy in the telephone numbers they dial and in the duration of those calls, no citizen has a legitimate expectation of privacy in the scent of drugs wafting from inside their vehicle out into the open air outside the vehicle. *See State v. Dorff*, 171 Idaho 818, 828, 526 P.3d 988, 998 (2023), *cert. denied*, 144 S. Ct. 249 (2023).

Fletcher also argues that a drug dog sniff may reveal the most intimate details of a person's life because vehicles are critical to life in the Gem State. We disagree that this is a basis for departing from Supreme Court precedent. The mere possibility that intimate details might be revealed does not warrant heightened constitutional protection. By comparison, we have held that a search of trash left at the curb does not violate constitutional norms. *Donato*, 135 Idaho at 474, 20 P.3d at 10; *State v. Pulizzi*, ___ Idaho ___, 559 P.3d 1220, 1228 (2024). Such trash may reveal the intimate details of a person's life. *See California v. Greenwood*, 486 U.S. 35, 50 (1988) ("A search of trash . . . can relate intimate details about sexual practices, health, and personal hygiene . . . financial and professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests."). Unlike a trash pull, use of a drug dog "only reveals the presence of contraband" and reveals nothing else about the vehicle's interior or its occupants. *Howard*, 169 Idaho at 382, 496 P.3d at 868. Thus, Fletcher's intimacy argument is unavailing. The information, or lack thereof, obtained when a drug dog sniffs the air outside a vehicle stands in stark contrast to the information revealed by trash pulls, which we have held are

5

permissible under Idaho's Constitution. *Donato*, 135 Idaho at 474, 20 P.3d at 10; *Pulizzi*, ___ Idaho ___, 559 P.3d at 1228.

Fletcher next argues that drug dogs are comparable to the thermal imaging device used in *Kyllo*. In *Kyllo v. United States*, the Supreme Court of the United States held that using "sense-enhancing technology [to obtain] any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area,' constitutes a search—at least where (as here) the technology in question is not in general public use." 533 U.S. 27, 34 (citation omitted). There, police officers used a thermal imaging camera to observe the heat radiating from a house to determine whether marijuana was being grown in the home. *Id.* at 29–30.

Fletcher's invocation of *Kyllo* is of limited usefulness in this case. In *Caballes*, the Supreme Court noted that the use of a drug dog to perform an exterior sniff is "entirely consistent" with *Kyllo*. *Caballes*, 543 U.S. at 409. Thermal imaging devices can reveal both unlawful and lawful activity, including "at what hour each night the lady of the house takes her daily sauna and bath." *Id.* at 410 (quoting *Kyllo*, 533 U.S. at 38). The expectation of privacy in perfectly lawful activity within a home is "categorically distinguishable" from Fletcher's "hopes or expectations concerning the nondetection" of methamphetamine in her car. *Id.*

This Court's recent decisions emphasize the protections Idaho motorists enjoy from unreasonable searches and seizures and unlawful trespasses related to the use of drug detection dogs. We have held that police may not extend a traffic stop, even for a *de minimis* amount of time, to conduct a drug dog sniff. *See State v. Riley*, 170 Idaho 572, 579, 514 P.3d 982, 989 (2022); *State v. Karst*, 170 Idaho 219, 227, 509 P.3d 1148, 1156 (2022) (nineteen second pause to radio for drug dog impermissible). We have also held that a "search" occurs for purposes of the Fourth Amendment when a dog trespasses by placing its paws on a vehicle during a sniff. *Dorff*, 171 Idaho at 829, 526 P.3d at 999.

These established protections guard against police misconduct and preserve the privacy interest Idahoans have in their vehicles. Drug dog sniffs are "*sui generis*," or in a class by themselves. *United States v. Place*, 462 U.S. 696, 707 (1983). They are uniquely limited in both the manner in which information is obtained and the nature of the information acquired. *Id.* For these reasons, we hold that the use of a drug detection dog to conduct a "free air" sniff of the exterior of a vehicle is not a search under Article 1, Section 17 of the Idaho Constitution.

**B.      Article 1, Section 17 of the Idaho Constitution does not impose a heightened standard for the automobile exception.**

Fletcher also argues that, along with the greater protection against dog sniffs, "the heightened privacy interests for Idaho citizens support a protection against warrantless searches of secured vehicles without any exigency." Thus, Fletcher argues that the automobile exception to the warrant requirement does not apply under the Idaho Constitution when the vehicle is secured and obtaining a warrant is practicable. Fletcher begins by noting that this Court's decision in *State v. Henderson* shows the heightened expectation of privacy Idahoans have in their vehicles. 114 Idaho 293, 756 P.2d 1057 (1988). Fletcher then extrapolates to the present day—arguing that technological advances have made warrantless searches minimally more efficient than the process of securing a warrant, thereby negating one of the historical justifications for the traditional automobile exception. Finally, Fletcher argues that imposing a warrant requirement will vindicate violations of privacy interests inherent in allowing widespread warrantless searches. As set forth below, Fletcher has failed to demonstrate sufficient Idaho-specific unique circumstances that dictate a heightened standard for the automobile exception under our constitution.

Fletcher argues that our decision in *Henderson* is instructive on the constitutional limits of Idaho's automobile exception. There, we considered whether warrantless roadblocks to detect and deter drunk driving could survive constitutional scrutiny. *Henderson*, 114 Idaho at 293, 756 P.2d at 1057. We considered many relevant factors, but two are notable. First, the legislature's Joint Subcommittee on DUI had, just four years prior, promulgated a report indicating its aim to discourage roadblocks, which were "strictly allowable only in certain situations as provided in [Idaho Code section] 19-621," which provided that roadblocks are permitted for the purpose of apprehending persons "reasonably believed . . . to be wanted for violation of the laws of this state." *Id.* at 297, 756 P.2d at 1061 (citation omitted). Second, we noted that testimony from the Boise Chief of Police established that warrantless roadblocks were less effective at detecting drunk driving than patrol stops based on probable cause. *Id.* at 296–97, 756 P.2d at 1060–61.

Fletcher's reliance on *Henderson* is unpersuasive. The roadblocks at issue in *Henderson* applied to every motorist on the road. In contrast, the automobile exception requires "probable cause to believe that the vehicle contains contraband or evidence of a crime" before an officer may search. *State v. Randall*, 169 Idaho 358, 366, 496 P.3d 844, 852 (2021). Further, in *Henderson* we cited evidence of Idaho-specific unique circumstances, including a report from the legislature's Joint Subcommittee on DUI, justifying a departure from interpretations of the federal constitution.

7

The record here lacks such evidence. Finally, the record in *Henderson* included testimony that a legitimate law enforcement goal was not served by warrantless roadblocks, which delayed impaired and sober motorists alike, because officers on patrol made more DUI arrests than those made at the roadblocks. In contrast, the automobile exception has no analogous "patrol" officer archetype and is triggered only after an officer has probable cause to believe the vehicle contains evidence of a crime. *Id.*

In *State v. Storm*, the Iowa Supreme Court declined to limit the automobile exception under the Iowa Constitution in the same manner that Fletcher proposes here. 898 N.W.2d 140 (Iowa 2017). The court explained "[t]he automobile exception rests on twin rationales: (1) the inherent mobility of the vehicle, and (2) the lower expectation of privacy in vehicles compared to homes and other structures." *Id.* at 145. The court noted the automobile exception provides "the clarity of bright-line rules in time-sensitive interactions between citizens and law enforcement." *Id.* at 156. These clear rules are "especially beneficial when officers have to make quick decisions as to what the law requires where the stakes are high, involving public safety on one side of the ledger and individual rights on the other." *Id.* at 156 (citation modified). The court further clarified that the automobile exception is "rooted in good policy that balances private interests with the collective good, even as it provides law enforcement with clear and unequivocal guidelines for doing their jobs." *Id.* at 150 (quoting *State v. Lloyd*, 312 P.3d 467, 474 (Nev. 2013)). The court also distinguished the argument made by Fletcher here that technological advancements make getting a warrant for an automobile easier than it was in former times when the automobile exception was adopted, noting that requiring electronic warrants may have adverse consequences, because "forcing an officer to draft a search warrant application while multitasking on the side of the road may jeopardize the accuracy of the warrant application and would require motorists to be detained for much longer periods." *Id.* at 155. We agree with all these rationales for maintaining the automobile exception in Idaho. Cars remain readily movable and "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects." *Cardwell v. Lewis*, 417 U.S. 58, 590 (1974). Accepting Fletcher's arguments would require courts to engage in "a case-by-case exigency determination that results in less predictable, inconsistent outcomes and prolonged seizures with roadside hazards and no net gain in liberty." *Storm*, 898 N.W.2d at 145.

The vast majority of states continue to apply the automobile exception. *See Storm*, 898 N.W.2d at 148, n.4 (collecting cases). Federal courts and the courts of forty-two of our sister states continue to permit warrantless searches of cars based on probable cause—despite the increasing convenience of obtaining an electronic warrant. *See State v. McClain*, No. 24-0462, 2025 WL 1271142, at *10 (Iowa May 2, 2025). Importantly, some of those states had previously abandoned the automobile exception only to reinstate it. *See Lloyd*, 312 P.3d at 474 (abandoning separate exigency requirement); *State v. Witt*, 126 A.3d 850, 853 (N.J. 2015); *Gomez v. State*, 168 P.3d 1139, 1145 (Okla. Crim. App. 2007); *State v. Werner*, 615 A.2d 1010, 1014 (R.I. 1992). The ubiquity of this approach reflects its wisdom. We decline to impose a heightened standard for the automobile exception under Article 1, Section 17 of the Idaho Constitution.

## C. We affirm the denial of Fletcher's motion to suppress under the automobile exception to the warrant requirement.

The State argues, based largely on the district court's opinion, that irrespective of the rulings we issue today about open air drug dog sniffs and the automobile exception, this case may be affirmed based on Fletcher's status as a felony probationer. The State argues that since Fletcher was on felony probation, the search was justified by Fletcher's IDOC probation agreement because either: (1) Fletcher's constitutional waiver deprived her of standing to challenge the officers' search of her vehicle, and *State v. Maxim*, 165 Idaho 901, 454 P.3d 543 (2019), was wrongly decided to the extent it compels a conclusion to the contrary; or (2) the circumstances of the present case are distinguishable from *Maxim* because the officer knew that Flecher was on felony probation for a controlled substance offense.

While the district court centered much of its analysis discussing (1) the nature of Fletcher's probation agreement and (2) in critiquing this Court's holding in *Maxim* and other authorities regarding a probationer's waiver or consent, we see no need to address those issues today. We decline the State's request and leave that question for another day because we have resolved this case under the legal authorities and analysis set forth above. Because we find the record supports application of the automobile exception and both Fletcher and the State provided argument on the issues resolved here, both below and on appeal, we affirm on these grounds.

Warrantless searches are presumed unreasonable unless they fall within an exception to the warrant requirement. *Randall*, 169 Idaho at 365, 496 P.3d at 851. One such exception is the automobile exception. *Id.* at 366, 496 P.3d at 852. Officers may conduct a warrantless search of a vehicle "when they have probable cause to believe that the vehicle contains contraband or evidence

9

of a crime." *Id.* "A reliable drug dog's alert on the exterior of a car, *standing alone*, is sufficient to establish probable cause for a warrantless search of the interior." *Id.* (emphasis added). This exception applies even if the vehicle is secured and there are no exigent circumstances other than the vehicle's mobility. *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *Texas v. White*, 423 U.S. 67, 68, (1975) (per curiam).

Our review of the record indicates the officers had probable cause to search Fletcher's vehicle. Corporal Canfield was on scene at the time of arrest, therefore there was no delay in calling for a drug detection dog. Canfield began the sniff with Cano at the front bumper. When he got to the driver's door, Cano sniffed the handle and sat down. Canfield tried to get Cano to continue the sniff, but Cano remained seated. Canfield testified that he "refused to leave the odor and kept reaffirming up in its direction." Canfield further testified that "it was absolutely an alert."

This case is unlike *Howard* where we were "left with little more than our intuition about the significance" of the dog's behavior. *Howard*, 169 Idaho at 384, 496 P.3d at 870. There, an officer testified that her dog would sometimes "freeze" and try to cheat the system. *Id.* We were unable to tell whether probable cause existed because the evidence indicated the dog "froze and looked back at the officer" before entering the defendant's car. *Id.* In contrast, Canfield's testimony at the suppression hearing unequivocally established that Cano alerted to the presence of drugs.

The district court found that Canfield indicated Cano could be smelling drugs from inside the vehicle, or the dog could be smelling the residue left behind from someone who touched drugs and then touched the driver's door. That could be a plausible explanation in almost all drug dog sniffs. Yet our prior cases have not evaluated probable cause based on whether the officer thinks his dog is smelling residue on the outside of the car or odors wafting from the inside. This is because probable cause "deal[s] with probabilities" and "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). The *alert itself* is sufficient to establish probable cause to search the vehicle. *See Randall*, 169 Idaho at 366, 496 P.3d at 852; *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). Cano's alert on the driver's door, standing alone, was sufficient to establish probable cause for the officers to search the vehicle.

## V. CONCLUSION

The district court's order denying Fletcher's motion to suppress is affirmed.

Justices BRODY, MOELLER, ZAHN, and MEYER CONCUR.